SHERK *v.* HOLMES.

1. Contracts—Nonperformance—False Representations.
   Defendants, who, in reliance on plaintiff's statement that he had an option on certain mineral lands, promised to employ him to prospect the lands, could not be held liable for a refusal to carry out their contract, where it appeared that he had no valid option.

2. Same—Construction.
   Where a contract provided that plaintiff should "at once proceed" to explore certain lands, for which services he was to be paid a stated sum, "together with all traveling expenses made necessary in connection with his employment," no payment could be required from defendants before any expenses were incurred, and hence a failure to advance money therefor was not a breach of the contract.

3. APPEAL—BILL OF EXCEPTIONS—OMISSIONS—PRESUMPTION.

> Where a bill of exceptions sets out the testimony of the successive witnesses apparently in full, with nothing to indicate that any part of the evidence is omitted, the court will not entertain a presumption that there was evidence in contravention of a claim of fraud clearly established on the face of the record.

Error to Wayne; Frazer, J. Submitted October 11, 1900. Decided October 31, 1900.

*Assumpsit* by Thomas Sherk against John T. Holmes and George A. Beaton for the nonperformance of a contract. From a judgment for plaintiff, defendants bring error. Reversed.

*Jonathan Palmer, Jr.*, for appellants.

*Herbert L. Baker* and *Frank B. Clark*, for appellee.

HOOKER, J. The parties made a contract in writing, as follows:

"This agreement, made between Thomas Sherk, John T. Holmes, and George A. Beaton, all of the city of Detroit, Michigan, witnesseth that—

"*Whereas*, said Sherk has information respecting a tract of land of about six hundred acres, situated in Jackson county, in the State of North Carolina, upon which it is believed there is a deposit of mica, of great value; and

"*Whereas*, said Sherk has more or less information respecting other parcels of land in the State of North Carolina upon which there are supposed to be valuable mineral deposits; and

"*Whereas*, said Holmes and Beaton have information of a tract of land supposed to contain about six hundred acres, situated in Macon county, in said State, close to the southern boundary thereof, upon which it is believed there is a deposit of asbestos; and

"*Whereas*, said parties have more or less information of other parcels of land in the western part of the State of North Carolina and adjacent parts of the State of Georgia upon which it is said there are valuable mineral deposits of various sorts:

"Now it is agreed:

"1st. That said Sherk shall, within the next fifteen days, prepare descriptions of the lands in addition to said Jackson county mica lands in respect to which he has information. Such descriptions are not expected to be definitely accurate, but sufficient to identify the different parcels of land to which he intends to refer, and shall furnish such descriptions within the time above mentioned to Holmes and Beaton.

"2d. Said Sherk is at once to proceed to the territory above mentioned, and bestow his time and attention in prospecting said Jackson county mica lands, and such other mineral lands as the parties hereto may agree upon, and is to report all that he finds to said Holmes and Beaton. Said Sherk is not to engage in any other pursuit without the consent of Holmes and Beaton. For his services he is to be paid by Holmes and Beaton one hundred and fifty dollars a month, together with all traveling expenses made necessary in connection with his employment. Such employment is to continue until a corporation shall be organized for the purpose of taking over said Jackson county mica lands, not exceeding, however, one year from the date hereof. After further exploration of said Jackson county mica lands, if the result of such exploration proves to be satisfactory, Holmes and Beaton are to furnish the money necessary for the purchase of said lands, and to develop the same, and to carry on the business of mining thereon. Said Sherk shall not be subjected to any part of the cost or expense of the purchase or development of said last-mentioned lands, or be in any way made liable therefor.

"3d. The interests in said Jackson county lands, and the business carried on in connection therewith, shall be divided between the parties as follows: Said Sherk shall have one-fourth, said Holmes and Beaton the remaining three-fourths.

"4th. If the parties hereto decide to purchase any of the other parcels of land of which said Sherk shall furnish the descriptions within the said fifteen days, then and in such case said Holmes and Beaton shall provide the money to make such purchase, to develop such lands, and to establish and carry on the business of mining thereon, and said Sherk shall not be made liable for any part thereof. The interest in such lands shall be divided between the parties as follows: Said Sherk shall have one-fifth, said Holmes two-fifths, and said Beaton two-fifths.

" 5th. If the parties hereto shall decide to make the purchase of said asbestos lands in Macon county, or to purchase any lands aside from the Jackson county mica lands and aside from the lands in said list furnished by Sherk, then and in such case all the parties hereto shall furnish the money to pay for such purchase, and to develop such lands, and to carry on mining operations thereon in proportion to their interest therein, as follows : Said Sherk one-fifth, said Holmes two-fifths, and said Beaton two-fifths.

"6th. If Holmes and Beaton so decide, one or more corporations shall be organized by the parties hereto for the purpose of owning any of such mineral lands and for the purpose of carrying on mining operations thereon, and in such case the mineral lands designated by Holmes and Beaton to be owned and controlled by any such corporation, the title to which and rights held by either of the parties hereto shall be at once conveyed to such corporation or corporations, so as to vest such corporation or corporations with such title. But, whenever any such corporation or corporations are organized, the stock thereof shall be divided in the proportions hereinbefore mentioned, and issued to each party accordingly.

"7th. If Holmes and Beaton so decide (but not otherwise), said Sherk will consent to act as superintendent for a corporation that may be hereafter organized to operate what is known as the 'Lyle Knob Property,' situated in Macon county, North Carolina, but in that event said Holmes and Beaton shall make the bargain for such services, and the proceeds thereof shall be treated as an income of the business, in which the said Sherk has one fifth and said Holmes and Beaton the remainder.

[Signed]   "THOMAS SHERK.<br>
"JOHN T. HOLMES.<br>
"GEO. A. BEATON.

"Dated Nov. 9th, 1897."

The plaintiff, Sherk, has brought this action to recover damages for nonperformance. The circuit judge left the case to the jury, and a verdict was returned for the plaintiff, and upon the rendition of judgment upon the verdict the defendants have appealed.

The defendants claim that the contract was obtained from them by means of the false statement that plaintiff had an option on the lands in contemplation of the parties,

and that upon finding out that fact they declined to perform until he should get such option; that he obtained two options, but neither was based upon a valid consideration. They claim also that, if said contract was binding, plaintiff broke it by neglecting to perform the services agreed upon. He claims that his reason for not performing the contract was that the defendants did not provide money for the expenses of his trip. The court left the question of fraud to the jury, and also the construction of the contract as to expenses.

The representation was material if the parties saw fit to so consider it; and if the statement that he had an option was believed and relied upon, as the record indicates, the defendants might refuse to perform the contract until it should be procured, and it would not be unreasonable for them to hesitate in incurring expense until assured by a valid option that they could reap the benefit of their expenditure. There was positive evidence, admitted to be true, that the representation was made, and that it was untrue. It conclusively appeared that no consideration was paid for the alleged option subsequently obtained. The uncontradicted testimony shows it to have been believed and relied upon, and that objection was made because the option was not furnished. These things appearing without contradiction, the defendants were entitled to a verdict by direction of the court.

It is said that we cannot assume that there was no evidence in contravention of defendants' claim of fraud, and that the record does not show that all of the testimony was incorporated in the bill of exceptions; but we think otherwise. See *Schermerhorn* v. *Merritt*, 123 Mich. 313 (83 N. W. 405), and authorities there cited.

We are also of the opinion that the construction of the contract should not have been left to the jury. It was in writing, and unqualifiedly provided that Sherk should "at once proceed to the territory," etc. This was not contingent upon his being furnished with money for disbursements, nor was there a provision that money was to be

advanced, but he was to be paid for his services a stated sum, "together with all traveling expenses made necessary in connection with his employment." We are of the opinion that such payment could not be required before the expenses were incurred, and that a failure to advance money was not a breach of the contract.

The judgment is reversed, and no new trial ordered.

MONTGOMERY, C. J., MOORE and GRANT, JJ., concurred. LONG, J., did not sit.